**James Garrison, Esq., (SBN: 224401)**
324 Maple Ridge Dr.,
Big Bear City, CA 92314
Email:garrison61@hotmail.com

**Nupur Nagar, Esq., (SBN: 224573)**
17601Canyonwood Dr.,
Riverside, CA 92504
Tel: 951-347-7647
Fax: 951-346-3745
Email: nupurnagar87@gmail.com

Attorneys for Plaintiff, DR. SUJATA VYAS, an individual

# UNITED STATED FEDERAL COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SUJATA VYAS, an individual,** | ) CASE NO.: SACV15-02152 RSWL |
| **Plaintiff,** | ) (DFMx) |
| **vs.** | ) |
| | ) |
| **BHASKAR VYAS, an individual;** | ) District Judge: Ronald S. Lew |
| **NANCY BUNN an individual;** | ) |
| **LOCKHEED MARTIN PENSION** | ) |
| **PLAN AND CHAMBERS QDRO** | ) **PLAINTIFF'S FIRST** |
| **CONSULTING SERVICES, LLC;** | ) **AMENDED COMPLAINT FOR:** |
| **CHARLES SCHWAB  AND SCHWAB** | ) **(1) DECLARATORY AND** |
| **RETIREMENT PLAN SERVICES** | ) **EQUITABLE RELIEF,** |
| **COMPANY AS PLAN** | ) **(2) INJUNCTIVE RELIEF,** |
| **ADMINISTRATOR; and DOES 1** | ) **(3) ACCOUNTING,** |
| **through 100, inclusive,** | ) **(4) CONSTRUCTIVE TRUST** |
| | ) **AND RESTITUTION, AND** |
| **Defendants.** | ) **(5) DAMAGES AS THE COURT** |
| | ) **SEES FIT** |
| _____ | ) |

## INTRODUCTION

1.  Plaintiff brings this suit against Plan Defendants Lockheed Pension Plan, Plan Administrator Chambers QDRO Consulting Services LLC, Charles Schwab, Schwab Retirement Plan Services as Plan Administrator, Mr. Bhaskar Vyas, Plaintiff's ex-spouse and Nancy Bunn an individual. This suit is brought against Plan Defendants Lockheed Martin Pension Plan with regards to the Lockheed Martin Pension Plan (401) of which Plaintiff holds a beneficial interest in her ex spouse, the Defendant Bhaskar Vyas's Pension Asset, against Nancy Bunn an individual and Charles Schwab and Schwab Retirement Plan Services as Plan Administrator with reference to the Keogh Retirement Plan and Tax Savings Retirement Plan (the "TSR" or the 401k plan).

2.  Counts 1,2,3, and 4 are brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Counts 8 and 10 are brought under the Securities Act of 1934 and Count 9 is brought under the various theories as described herein.

3.  Count 3 relates to the ERISA claims with regards to Lockheed Martin Pension Plan and are brought against Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC for failure to provide information to Plaintiff upon request in violation of ERISA regulations and

applicable law; against ex-spouse Defendant Bhaskar's for breach of fiduciary duty for non-disclosure of information and commission of fraud and misrepresentation to defraud Plaintiff for her share of the Pension Plan and possibly other accounts under both ERISA and Securities fraud and for theft and misrepresentation of Rollover IRA not disclosed to Plaintiff under both ERISA, Securities and Federal common law claims.

4. Counts 4,9 and 10 are brought against Charles Schwab, Schwab Retirement Plan Services company under violations of ERISA provisions and violations of State and federal laws specifically breach of fiduciary duties under the ERISA regulations.

5. Counts 1,2 and 8 against Defendant Bhaskar Vyas with regards to breach of fiduciary duty under ERISA and as well as Misrepresentation claims under Federal Common Law and Securities law. Plaintiff and Defendant Bhaskar separated in 2003 and obtained a divorce decree in 2009. The property division as regards to disclosed retirement assets, IRA, and other accounts were not achieved till recently. In the divorce decree, related Court filings and order Defendant Bhaskar failed to disclose Lockheed Martin Pension Plan (401 K plan). This concealed Pension Plan Asset remained undisclosed to date on all Court documents. Plaintiff discovered the Lockheed Martin Pension Plan in or about August 2015. Thereafter,

Plaintiff initiated contact with Lockheed Martin Pension Plan and

Chambers QDRO Consulting Services LLC the Plan Administrator on the

Lockheed Martin 401(k) Plan. On or about August 18, of 2014, Lockheed

Martin Pension Plan informed Defendant that he became eligible to take

either take a lump sum distribution or an annuity on the account. Thus on

this date, on or about August 18, 2014, according to the Lockheed Martin

Communication as shown in the exhibit, Defendant Bhaskar attained

discretionary control on the Plan Asset. When Plaintiff through her

representatives contacted the Plan Administrator for Lockheed Martin

Pension Plan, she was told that the asset was a community property based

on the divorce decree submitted by Plaintiff to the Plan Administrator, but

would need Court orders to receive any further information.  This pension

plan asset is a community asset that was concealed and therefore no

QDRO could be obtained on the asset. Plaintiff is conferred an interest

based on State and federal law that that recognizes the interest of an ex-

spouse as a beneficiary under the ERISA regulations. The plan asset is also

a security under the federal securities laws, and any concealment of such

asset provides Plaintiff with rights under ERISA, Securities laws and

common law theories. Plaintiff has standing under the ERISA as

beneficiary as an ex-spouse, under the Department of Labor guidelines and under both Securities and other common law theories.

6. Counts 4 and 9 are causes of action brought against Charles Schwab and Schwab Retirement Plan Services Company as Plan Administrator for retirement plan Keogh and TSR (Tax Savings Retirement Plan, a 401K plan). These are defined contribution plans administered by Charles Schwab.

7. Counts 6 and 7 relate to allegations brought against jointly stipulated QDRO attorney Ms. Nancy Bunn. Plaintiff and Defendant retained Court appointed neutral QDRO attorney Nancy Bunn to draft and finalize QDRO on the ERISA retirement assets back in 2003. After obtaining divorce in 2009 Ms. Bunn initiated QDRO drafting on or about 2012. These documents were finalized as recent as 2015. When these drafted and proposed QDRO's were presented to Plaintiff, upon review by her legal counsel, Plaintiff realized that the drafted documents were ambiguous and lacked the specificity required for division of Plan Assets as required by ERISA guidelines. On several occasions, Plaintiff informed Ms. Bunn that she objected to the drafted QDRO because the language of the documents was not specific enough. Plaintiff legal counsel and representatives reached out to Ms. Nancy Bunn through several communications. A log of

such communications is present and Plaintiff shall produce such log when and if required to do so. Plaintiff is not sure whether or not the State Court was aware of her objections although she filed a notice of objection. Plaintiff is aware and States that Ms. Nancy Bunn did not inform the Court of any of Plaintiff's objection(s) when she procured the Court's approval on the QDRO orders. Ms. Bunn specifically refused to communicate and address these objections made by Plaintiff. In essence Plaintiff objected to the construction of the language in the QDRO documents directing the division of Plan Assets. These DROs were then submitted to Plan Administrator Charles Schwab for all Plans administered under Schwab. Plaintiff brings only the specific plan; the Keogh Retirement Plan and the TSR (Tax Savings Retirement Plan) as the subject of this complaint as these accounts are Plaintiff's contributions (post separation contributions) and Plan are contributory plans.

8.  After the QDRO documents were approved by the State Court, these were presented to Kaiser Retirement Plan Center and or Schwab Retirement Plan Services Company as the Plan Administrator for the various Plans. ***On or about June 2015 Charles Schwab moved approximately $200,000 that was separate property of Plaintiff in lieu of Defendant's community share causing substantial impact on Plaintiff' Plan Asset Value***. This

was neither part of the DRO instruction approved by Court nor an instruction by Plaintiff. Schwab transfer was in violation of ERISA, Federal law and other common law principles. This is discussed more fully under relevant facts.

9. Counts 6 and 7 specifically apply to Nancy Bunn who filed these QDRO without incorporating specific instructions on how to divide the plan assets after receiving Plaintiff's objections. Plaintiff's counsel made multiple attempts to resolve the issues with Nancy Bunn. Plaintiff shall provide a complete log of all emails if and when required to do so. Nancy Bunn refused to communicate with Plaintiff's legal counsel and submitted the DRO over Plaintiff's objections to the Court and procured the Court approval without disclosing and discussing the objections raised by the Plaintiff. Based on these DRO documents submitted to Kaiser Retirement Center and the Plan Administrators handling these issues, Charles Schwab transferred substantially most of Plaintiff's separate property to her ex-spouse in lieu of latter's share of community property thereby immediately transferring Plaintiff's separate property post separation cash reserves in the Plan Assets and transferring the entire transfer tax and tax costs of the community share to Plaintiffs separate share thereby decreasing the Plan value for Plaintiff. This transfer was not necessary as there was adequate

community property sitting in the Plan Assets to fund ex-spouse's share. The issue then resolves and hinges on the interpretation and construction of Plan documents. Plaintiff has standing under ERISA as a Plan Participant on all Plans administered by Charles Schwab and specifically discussed herein.

10. Count 3 is a claim for penalties under ERISA section 502(c) 29 U.S.C. section 1132 (c ), due to Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC as Plan Administrator's failure to comply with Plaintiff's request for information on the Lockheed Pension Plan required to be provided under ERISA.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. section 1331 and 1343 over Plaintiff's causes of action under the Constitution of the United States, 42 U.S.C. section 1981 and 1983, 29 U.S.C. section 1132 (e)(1) because this action arises under the Employee Retirement Income Security Act of 1974("ERISA"), 29 U.S.C. section 1001, et seq. ERISA section 502(a)(2). 29 U.S.C. section 1132(a)(2) and ERISA section 502(a)(3), 29 U.S.C. section 1132(a)(3) permit participants or beneficiaries, inter alia, to bring claims for relief under ERISA section 409, 29 U.S.C. section 1109 for breaches of ERISA's fiduciary provisions. This Court has supplemental

jurisdiction over Plaintiff's causes of action under California law pursuant to 28 U.S.C. section 1367. Jurisdiction is also conferred by section 27 of the 1934 Act. The claims asserted herein arise also under section 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5. This is also an action to redress the deprivation of Plaintiff's' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. section 1981 and 1983.

## **PERSONAL JURISDICTION**

12. ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to the jurisdiction of a Court of general jurisdiction in the State of California.

## **VENUE**

13. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plans are administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside and/or transact business in this district. Venue is also

proper in this district pursuant to 28 U.S.C. section 1391(a) in that Defendant and or Defendants are subject to personal jurisdiction within this district of California and the events which give rise to this action occurred within this district.

## THE PARTIES AND THEIR ERISA RELATIONSHIPS

14. Plaintiff, Dr. Sujata Vyas ("Plaintiff"), is a California Resident who was married to Defendant, Bhaskar Vyas ("Defendant"), in 1981 and separated in 2003. The divorce was finalized in 2009 with the final division of the marital assets through QDRO Orders being finalized as of December 21, 2015. During this period of time Plaintiff and Defendant accumulated ERISA assets, some on which Plaintiff was the beneficiary with Defendant being the alternate payee and others in which Plaintiff was the alternate payee and Defendant was the beneficiary. These are listed below. The divorce was finalized over a period of time and the final division of the assets (most if not all being marital assets) were completed as of recently due to the fact that the ERISA Plans of Plaintiff and Defendant had changed Plan Administrators and the process took a longer time to track records. Because there has been limited discovery opportunities and Plaintiff had depended on the truthfulness of the disclosures filed by the Defendant, the assets disclosed here are the only ERISA assets known to Plaintiff. Plaintiff will request accounting and seek to subpoena all known

employers for which Defendant has worked since it has been discovered that Defendant has concealed and stolen Lockheed Martin Pension Plan Benefits. Plaintiff upon information and belief also takes the position that there are undisclosed Rollover IRAs that are community property which Defendant Bhaskar has concealed to date.

**TO PLAINTIFF'S KNOWLEDGE (SINCE PLAINTIFF HAS NOT BEEN ABLE TO CONDUCT ANY DISCOVERY ON ANY OTHER HIDDEN ASSETS): THE FOLLOWING ERISA ACCOUNTS WHICH ARE SUBJECT OF THIS COMPLAINT AND ARE HELD BY THE PARTIES (ALL ERISA PLAN ASSETS ARE MARITAL PROPERTIES):**

a.     Southern California Permanente Medical Group (S.C.P.M.G.) Keogh Plan- Plaintiff is the beneficiary and Defendant is the alternate payee. Charles Schwab is the Plan Administrator.

b.     Southern California Permanente Medical Group (S.C.P.M.G) Tax Savings Retirement Plan (TSR) or the 401 K Plan- Plaintiff is the beneficiary and Defendant Bhaskar is the alternate payee. Charles Schwab is the Plan Administrator.

c.      Global Retirement Solutions – 401 K Plan aka Chipton Ross – Defendant Bhaskar is the beneficiary and Plaintiff is the alternate payee

d.      Lockheed Martin Pension Plan –  Defendant Bhaskar is the Participant and Plaintiff would be the alternate payee and is a beneficiary of the Pension Plan.

e.      IRA Rollovers which Plaintiff believes are retirmenet assets under various accounts which have not been disclosed by Defendant Bhaskar Vyas.

15. These Plans (Plans a-c Stated above) have been recently submitted to the Orange County Superior Court Family Law Division for qualification as Qualified Domestic Relations Orders (QDRO) with the exception of Lockheed Martin Pension Plan. Lockheed Martin Pension Plan has not been submitted to Orange County Family Court as this asset was concealed by Defendant who has omitted this asset on all Court mandated disclosures and proceedings.

16. IRA rollover assets covered under ERISA do not require a QDRO; Plaintiff believes these assets were not disclosed on prior Court filings and still remain concealed. Plaintiff believes that future discovery would reveal all such accounts or plans. Plaintiff shall produce such records when and if required to do so.

## DEFENDANTS AND PLAN DEFENDANTS

17. Defendant Bhaskar Vyas was the sole financial manager, stockbroker and investment advisor during the marital relationship. On or about August 2014, Defendant Bhaskar obtained descretionary control of Lockheed Pension Plan the 401k plan when he became eligible to take a lump sum distribution or an annuity. It is Plaintiff's belief that Defendant Bhaskar excercised or had the descretion to control investments in the Pension Plan even earlier as Stated in the Lockheed Pension Plan documents, in which instance Defendant Bhaskar qualifies as fiduciary under the ERISA regulations even before. Defendant Bhaskar is also a fiduciary with respect to the 401K as covered under the Federal Securities regulations. Defendant Bhaskar is also fiduciary of any and all rollover IRA accounts that have not been disclosed.

18. Defendants, Lockheed Martin and Chambers QDRO Consulting Services LLC, are  Plan Administrator(s) with regards to Lockheed Martin's Pension Plan and are fiduciaries with respect to ERISA plans within the meaning of ERISA section 3(21)(A) and 402(a)(2), 29 U.S.C. section 1002 (21)(A) and 1102 (a)(2).

19. Defendant, Charles Schwab and Schwab Retirement Plan Services Company is the Plan Administrator(s) for Plaintiff's Keogh Retirement Plan and the TSR Pension Plan and would be the fiduciary with respect to ERISA

plans within the meaning of ERISA section 3(21)(A) and 402(a)(2), 29 U.S.C. section 1002 (21)(A) and 1102 (a)(2).

20. Defendant, Ms. Nancy Bunn, Court-appointed and jointly stipulated Qualified Domestic Orders Expert who is a third party Neutral party  and who filed the ERISA Plans with the Court and procured the QDRO orders for the ERISA Assets in violation of Plaintiff's rights under the ERISA act (procured the Court approval for the QDRO without Plaintiff's signatures and approval). Defendant Ms. Bunn violated other common law and State laws in breaching various duties under theories of contract, tort of negligence, misrepresentation and fiduciary duties.

## **RELEVANT FACTS**

21. Plaintiff and Defendant  Bhaskar were married in December 1, 1981 and separated in November 1, 2003. Plaintiff is a doctor and Defendant Bhaskar was an aerospace engineer who held himself out as a stockbroker, investment adviser engaging in the trading of various securities and investments and was a chief artichect of a complex web of financial network using interState commerce (wire and mail fraud) to defraud Plaintiff based on two primary schemes: (1) fraudulent accounting and reporting of assets such as concealment of assets and (2) fraudulent financial management where Defendant Bhaskar engaged in management of assets and securities

and concealed various assets and commission to move them from joint and community property to Defendant Bhaskar's separate property such as concealment of Lockheed Martin Pension Plan and possibly other IRA rollover accounts. ***See page 7 of Lockheed Martin Pension Plan where the status of Defendant Bhaskar reflects that he is "single" on the Plan Document.*** Plaintiff has filed a separate law suit on securities claims in State Court for all non ERISA assets and accounts and therefore will limit for purpose of this complaint only ERISA covered assets.

22. The concealed assets namely the Lockheed Pension Plan and Rollover IRA's which are regulated by ERISA which Defendant Bhaskar hid from Plaintiff were discovered when jointly stipulated QDRO attorney Nancy Bunn initiated drafting and filing of QDRO documents with the Orange county Superior Court and when Plaintiff moved to the family residence and discovered several accounts reflecting trading activities. During this process Plaintiff discovered that Defendant Bhaskar concealed two kinds of assets: (1) Lockheed Martin 401 k Pension Plan and (2) Rollover IRA's among other accounts which established that retirement assets had been concealed. With regards to the first-  Lockheed Martin Pension Plan (discussed below) the 401 K Pension Asset was a community asset which was not disclosed on the divorce decree.  Since this is a concealed asset along with the Rollover

IRA's and have only been recently discovered, these have not been presented to any State Court and this issue has never been brought up in any Court of competent jurisdiction. The orders regarding the ERISA have been finalized in the State Courts who are not at this time aware of the recent transfer of Plaintiff's separate property in Pension Plan Asset to Defendant's separate property, a clear violation but one that is based on a construction of the ERISA plan documents and the QDRO orders as well as violations of State and Federal laws.

23. The alleged QDRO documents that Ms. Nancy Bunn drafted and finalized specifically the DRO document- with regards to Keogh Pension Plan Asset and the TSR account included language and provisions that by their ambiguity or lack of clarity and by virtue of the QDRO document lacking specific instructions on the division of various fund accounts were in clear violation of any mandates instituted by the ERISA framework and State laws. In fact the QDRO orders do not have Plaintiff's correct mailing address among other deficiencies on the QDRO Orders. These instrument then have adversely impacted the value of the Plan Asset held by Plaintiff as described below. In general, the Plan documents had the following deficiencies:

a. Plan Administrators did not have specific and adequate powers to recoup any distributions that would be made in error.

b. The instrument lacked adequate tax provisions required and which are necessary to effectuate each party bearing their respective tax costs. These provisions have a direct impact on Plaintiff. The appropriate tax allocation provisions are lacking resulting in distribution that is not in accordance to State or federal law. Without these provisions the benefits received by the beneficiaries are adversely impacted.

c. Language in the QDRO document States that the document supersedes the marital settlement agreement or the Judgment settlement agreement without narrowing the language exposing the settlement agreement to some confusion; additionally, the valuation date selected may have an adverse impact on the plan asset value held by the plaintiff.

d. Lack of adequate instructions to divide the property and lack of specifying which in kind securities and accounts to be divided when the Plan Assets hold both community and separate property has resulting in a substantial negative impact on Plaintiff's Plan asset value as described below.

24. Plaintiff filed a Notice of objection but Orange County Family Law Court approved these Orders without providing Plaintiff an opportunity to be heard. These orders have a direct impact on the Plan, the value of the Plan to be received by the parties, the Administration of the Plan, and other issues exclusively regulated by ERISA regulatory framework.

25. Plaintiff through her attorneys made multiple attempts to try and work with Ms. Nancy Bunn to have these corrections made. Ms. Nancy Bunn refused to communicate with Plaintiff's attorneys and did not respond to any communication efforts by Plaintiff to incorporate changes to preserve her rights under the applicable ERISA provisions.  A log of such communications is available and Plaintiff shall produce these when and if required to do so.

26. Plaintiff was not afforded any hearing or opportunity on this matter. The Orange County Family Law Court approved the orders and to date Plaintiff but has not been able to get a hearing on the matter. Plaintiff did file an objection with the Court and it appears that there has been no response for a hearing in the State Court. The Orange County Family Law Court approved these changes by finalizing the Orders which affect the protections provided by ERISA. The Orders include provisions that impact the benefit values to be received by the Plan benefiaries, Plan administration, relationship

between Plan Administrators, participants and Plan Sponsors etc - an area reserved under the exclusive jurisdiction of the Federal Courts.

27. Specific Facts relating to the nature of Impact of the QDROs filed by Ms. Nancy  Bunn; the specific facts relating to the QDRO documents filed by Ms. Nancy Bunn are:

### *QDRO's impact on plaintiff's Keogh Plan Asset Value.*

The deficiency that has the biggest impact on the Keogh and the TSR Plan Asset Value for Plaintiff is the Lack of Adequate and Specific instructions on these documents on how to divide the different accounts held in the Plan Assets. For purposes of discussion an illustration is made with respect to the Keogh Plan.  To understand the adverse impact caused by the language of the QDRO orders on the Plan Asset Value, it is important to review the provisions of the QDRO for Keogh Plan and the provision of the Plan documents as administered by Schwab. Thus an understanding of the impact of the Orders on the Plaintiff's Plan Asset Value requires comparison of the distribution provision in the QDRO Order on the Keogh Plan as prepared by Ms. Nancy Bunn and the Charles Schwab QDRO Administrative Procedures with a specific review of the latter's distributive provision.

Before undertaking this journey, a brief description of the components of the Keogh Plan Asset is detailed: The Keogh Plan Asset consists of three tiers of

assets; the first component is what is called the Core Funds or investments which is exclusively managed by Charles Schwab as trustee and financial manager of the core funds, these are funds which Charles Schwab selects for the plan and plan participants do not have choice in the selection or choices to invest in. The second component is the Self Directed Fund account which has two sub accounts; the Cash Reserves and the brokerage accounts. Participants have limited discretion on the choices of investments and the cash account is the Cash reserves should the participant want to keep a cash reserve account. The ability to select any choices is offered via a platform called the "Personal Choice Retirement Account" or the "PCRA". The third component is the brokerage account and these are securities that the Schwab invests on behalf of the Plan. On the date of separation, the total value of the Keogh Plan asset was about $200,000. As of July 2014 this value was about $900,000. From year 2003 after separation to present Plaintiff deposited several contributions approximating about $340,000 into her Cash Reserves out of which she used approximately $180,000 to invest in selected securities post separation leaving post separation and separate property of cash reserves of about $160,000. Thus this $160,000 was Plaintiffs entire separate and post separation cash contributions sitting in the Self Directed Funds. There was adequate community property in kind (in securities and

some community cash reserves and other securities) to satisfy ex spouse's share of community property of $247,587. On July 2015 Charles Schwab transferred the entire cash reserve of Plaintiff to ex-spouse separate account in lieu of latter's share of community property leaving Plaintiff with entire capital gains tax, decrease in value of the stock and imposing a choice of investing in risky stocks, which Plaintiff was avoiding as a result of risky market downturns recently, as described fully below.

28. Provision 4 of the QDRO relating to the Keogh Plan as drafted and finalized by Ms. Nancy Bunn and approved by the Court are:

*Provision 4 of the QRO reads as follows*: "Alternate Payee's Share shall be $247,587.68 of the Participant's Keogh Account valued as of 07/31/2014, the Valuation Date, but in no event shall Alternate Payee's award exceed the vested value of Participant's Keogh account as of the Valuation Date coinciding with or immediately preceding the date on which the Alternate Payee's share is segregated from Participant's Keogh Account.

Provision 5 of the same QDRO reads: "Such amount shall be segregated pro rata from each of the Participant's Fund Accounts, other than the Participants Self Directed Fund Account, if any, as such other Fund Accounts are constituted as of the Plan's Valuation Date, coinciding with or immediately preceding the segregation date, and then from the Participant's

Self-Directed Fund Account, but only to the extent the amount segregated exceeds the amounts in the Participant's other Fund Accounts. Upon segregation of Alternate Payee's share from Participant's Fund Accounts, Alternate Payee's share shall be placed in a separate account for Alternate Payee in the same funds on a pro rata basis and then paid in a cash lump sum (adjusted for applicable investment gain and losses subsequent to the valuation date through the date of segregation into a separate account, as soon as practicable following the Plan Administrator's determination that this order is a QDRO and following Alternate Payee's request for a withdrawal or a rollover into an Individual Retirement Account or other qualified plan. Of such payment a pro-rata shares of after-tax contribution, if any, in Participant's Keogh Account shall be allocated to Alternate Payee in accordance with Internal Revenue Section 72(m) (10).

29. *Provision 13 of Charles Schwab QDRO administrative procedures reads*: "If the Plan allows a Participant the option of investing assets in individual brokerage accounts through the Personal Choice Retirement Accounts ("PCRA") program, and the Participant has elected that option, specific rules apply for reducing the Participant's account to fund the Alternate Payee's benefit. The Participant's account will be reduced according to specific instructions provided in the QDRO. If there are no instructions provided in

the QDRO for reduction of the Participant's account, the following procedures will be followed after the Participant is notified that PCRA investments may be liquidated to satisfy the Alternate Payee's award:

    a.  Participant Invested in PCRA and Core Investment.

        Please note that reference to "Core Investments" is in reference to investment options which are available to all Participants and have been selected by the Plan Sponsor and are not held I the PCRA.

    (i)       If the Participant's account is invested in both Core Investments and PCRA investments, and the Alternate Payee's account is to be initially invested in the investment option designated by the Plan Sponsor for investment of Participant funds for which investment instructions have not been received, the Participant's account will be reduced as follows:

    ☐ If the Alternate Payee's award can be satisfied out of Core Investments, then the entire amount will be moved from Core Investments on a pro-rata basis from the participant's Core Investments to the Alternate Payee's account.

☐ If Core Investments are not sufficient to satisfy the Alternate Payee's entire award, then the Alternate Payee's award will be satisfied by reducing the Participant's Core Investments and PCRA cash liquidity account on a pro-rata basis.

☐ If Core Investments and the PCRA liquidity account are not sufficient to satisfy the Alternate Payee's award, then the Participant will be contacted and asked to direct SRPS as to which PCRA investment(s) should be sold in order to create sufficient liquidity to fund the Alternate Payee's award.

(ii)    If the Participant's account is invested in both Core Investments and PCRA investments, and the Alternate Payee's account is to be invested in the same investments and in the same proportion as the Participant's account, the Participant's account will be reduced as follows:

• Transfer the Participant's Core Investments and PCRA investments in-kind into an account established for the Alternate Payee.  Such transfer will be made on a pro-rata basis from the Participant's account to the extent

investments can be transferred to satisfy the Alternate Payee's award.

**b.  Participant Invested in PCRA only.**

(i)      If the Participant is invested solely in PCRA investments, and the Alternate Payee's account is to be initially invested in the investment option designated by the Plan Sponsor for investment of Participant funds for which investment instructions have not been received, the Participant's account will be reduced first from the available funds in the PCRA cash liquidity account.   If PCRA liquidity account is not sufficient to satisfy the Alternate Payee's award, then the Participant will be contacted and asked to direct SRPS as to which PCRA investment(s) should be sold in order to create sufficient liquidity to fund the Alternate Payee's award.

(ii)      If the Participant is invested solely in PCRA investments, and the Alternate Payee's account is to be invested in the same investments and in the same proportion as the Participant's account, then the Alternate Payee's award will be satisfied by transferring in-kind into a PCRA established for the Alternate Payee the Participant's remaining assets on a pro-rata basis to the extent investments can be transferred to satisfy the Alternate Payee's award.

30. *Provision 14 of Charles Schwab QDRO administrative procedure reads*;

"**PCRA Reduction.** In all cases in which it is necessary to liquidate PCRA investments to fund the Alternate Payee's account, the Participant shall be contacted to determine which PCRA assets will be liquidated to fund the Alternate Payee's account.  In no case will SRPS be required to wait more than 10 business days after contacting the Participant to liquidate the PCRA investments.  If at the end of 10 business days there is no response from the Participant, the Plan Sponsor will be contacted for further direction.".

31. Comparing provision number 5 of Nancy Bunn's documents and provision number 13 and 14 of Charles Schwab QDRO Administrative procedure clearly shows that QDRO document does not contain specific instructions on which fund types to use to satisfy Alternate Payees account.  In June of 2015 Charles Schwab took the entire separate property and post separation reserves of Plaintiff in satisfaction of ex spouse's share of the community interest when the balance in the Plan Asset in the community shares was adequate as Stated in provision 27 above. The QDRO document provided that the amount to be given to ex-spouse as satisfaction of his share of the community should be $247,587.68. At that time the Plan Asset had adequate community share value to provide ex-spouse his share of the community by

taking stocks and securities and other community asset, instead of which Schwab took Cash reserves that was Plaintiff's post separation and separate property thereby producing a negative and substantial impact on Plaintiff's Plan Asset Value.

32. The above transfer had a disproportionate impact on Plaintiff's Plan Asset value. The division of the community property if performed property should have occurred by taking pro rata share of the Asset value with each party bearing their own tax burden. However, a cash transfer as was done, impacted Plaintiff by decreasing her share of the Plan Asset as follows: This illustration is based on Plaintiff's belief and information available at this time:

1. Market down turn in the imbedded securities in the Keogh Plan Asset, is entirely borne by Dr. Vyas when cash (separate property cash reserves of Dr. Vyas held in the Keogh Plan Asset) is transferred to ex-spouse shown below:

   ▪ In June 2015 Charles Schwab transferred ex-spouse's (Alternate Payee's) community share from Dr. Vyas's (Plan Participant) Keogh Account, amount of Cash $247,587. ***This amount was transferred to ex-spouse's Defendant Bhaskar's account from Dr. Vyas's post separation, separate property Cash contributions instead of giving it in stocks***.

- The Markets dipped significantly in 2016- and thus Dr. Vyas's portfolio which now was devoid of the Cash Reserves, took the entire brunt of the change in the market – while ex spouse's and Defendant Bhaskar's portfolio which had received moneys from Dr. Vyas's cash reserves and contributions (all separate property) was entirely protected from the dip in the Market. For the sake of adequate analysis both Dow Jones and S&P market values are shown below.

- The loss created by transferring Participants' post separation separate property of Cash to Alternate Payee, as Alternate Payee's community share caused Participant to bear the entire amount of the Market downturn as shown below:

Average decrease in securities portfolio: $26,120(average of the Dow Jones and S&P) in Participant's portfolio attributable to retention of stocks instead of Cash Reserves.

2. Capital gains taxes are now shifted entirely to Dr. Vyas shown here as follows:

For 12 years prior to separation Dr. Vyas contributed $15,000/year to Keogh Plan for a total contribution of $180,000. Community property share of ex-spouse's share would be 50% of this $180,000 or $90,000.

For 12 years prior to separation Dr. Vyas contributed $8000/year to TSR Plan, for a total of $96,000. Ex-spouse's share of this Community property would be $48,000.

Capital Gains for the Keogh Plan transfer is amount transferred ($247,587) – Ex-spouse's share of contribution to Keogh until 2003 ($90,000) resulting in Capital Gains estimated at $157,587 and using a 15% Capital Gains tax rate would result in a tax of $23,638 (15% of $157,587).

Capital Gains for the TSR Plan transfer is: amount transferred ($195,294) minus Ex-spouse's share of contribution to TSR until 2003 ($48,000) resulting in Capital Gains estimated at $147,294. Applying a 15% Capital Gains Tax Rate would result in Tax liability of $22,094.

Total Capital Gains on Cash Transfer that was shifted to Dr. Vyas(due to the fact that Charles Schwab did not divide the property in kind (in stocks) and instead took Dr. Vyas's post separation Cash Reserves separate property) is the sum of the market downturn impact of $26,120 + shifting the Capital Gains tax all to Dr. Vyas of amount $23,638 for Keogh + $22,094 for TSR or a total amount of $71,852.

Thus Dr. Vyas portfolio is impacted by a total amount of $71,852 or that much less in the future benefits.

<u>Conclusion:</u>

Dr. Vyas the Plan Participant shall be left bearing the entire cost of Capital Gains Tax in the amount of $45,732 and the market downturn or decrease in valuation in the amount of $26,120 for a total of $71,852. This will not include the costs of correction to be borne by Dr. Vyas.

A complete analysis to be provided subsequently.

33. Additionally, the cash transfer is not in compliance with ERISA guidelines or State law. The transfer of cash form Plaintiff's separate property is not authorized under the QDRO and Charles Schwab's own QDRO administrative procedures. Charles Schwab Administrative procedures State that Plaintiff should be notified before taking property that belongs to Plaintiff. Refer to Schwab Administrative provisions 13 and 14 (described above) which State that the Plaintiff should be notified but was not notified when her separate property post separation cash reserves in the Plan Assets consisting of her separate property cash contributions were taken and transferred out to ex-spouse. This is in clear violation of Plan documents.

Arguably either the QDRO documents allow this or do not, or Schwab documents allow this or do not, is a question of law, an issue of correct construction of the Plan documents, subsequent interpretation, administration of the Plan documents, the Plan Administrative Procedures, the systemic civil implementation of the such Plans and the associated Plan Administrative procedures.

34. Plaintiff through her legal counsel has made several attempts to reach out to Kaiser Plan (KP) Retirement Center and Plan Administrator to resolve the issue of Charles Schwab recent transfer as a result of the QDRO orders which have been deficient in their instructions. The KP Retirement Plan Center advised Plaintiff's legal counsel to seek Court Orders to effectuate any future corrections. Similarly, Plaintiff through her legal counsel made multiple attempts to reach Nancy Bunn who refused to communicate with Plaintiff on each of these occasions. Plaintiff maintains a record of her legal counsel reaching out to both these parties and has been advised to seek Court's assistance to (1) effectuate any corrections to the QDRO and (2) seek Court orders or instructions to the Plan Administrators to correct the recent transfer of separate property cash reserves of Plaintiff sitting in the Pension Plan Assets.

## Charles Schwab and Schwab Retirement Plan Services Company as

## Plan Administrator for Keogh Retirement Plan and TSR Plan

35. On or about July 2015, Charles Schwab and Schwab Retirement Plan Services Company transferred cash reserves of Plaintiff In lieu of Defendant Bhaskar Vyas (the ex-spouse of Plaintiff) share of the community property. The cash transfer of Plaintiff's post separation and separate property was done as result of the submitted Qualified Domestic Orders prepared by Ms. Nancy Bunn. This cash transfer of Plaintiff's separate property does not seem pursuant to either the QDRO or Schwab's own Administrative procedures, although Plaintiff upon discussion of this issue with KP Retirement Plan has been advised that such transfer was done pursuant to the drafted QDRO. Upon a closer look it does not seem to be authorized by either the QDRO or the Schwab procedures itself.  Either way, such cash transfer resulting in "taking" of Plaintiff's separate property which was not part of the Court divorce agreement or the Judgement Settlement Agreement.  Nor is such transfer according to the Plan documents and is clear violation of both State and federal law.  Plaintiff has attempted to reach all parties regarding this issue and has attempt to exhaust all efforts in resolving this issue.  Although each party was contacted and the issue of Plaintiff's separate property cash transfer remains unresolved. Plaintiff's discussions on the QDRO language that

resulted in the erroneous transfer with the Retirement Plan Administrator(s) has been pointed out as the result of lack of specific instructions on the QDRO documents and the issue is one of construction of the plan documents and their subsequent interpretation.

36. With regard to resolving this matter in any State Court: Plaintiff filed an objection to the QDRO drafts that were submitted to the State Court. The notice of objection did not result in any hearing requested nor was Plaintiff able to have neutral Court appointed expert Ms. Nancy Bunn retrun her calls even though multiple requests to discuss this matter were made. The entire issue of the QDRO was approved by the State Court and Plaintiff was not afforded any hearing or opportunity on this matter. Then these orders were submitted to the Plan Administrators. Upon receipt of the QDRO, Schwab promptly transferred Plaintiff's cash reserves that was her separate property leaving her to bear the entire burden of the tax cost. Such transfer was in violation of fiduciary duties of Schwab and in violation under ERISA and State law.

37. The QDRO orders as drafted fail to provide specific recoupment powers to the Plan Administrator and other deficiencies that directly impact Plaintiff's rights and benefits under these orders. The Orders are ambigous in that they fail to provide clear directives in how to divide specific accounts and they

resulting in the conversion of Plaintiff's separate property, impacting the benefit values to be received by the Plan benefiaries, relatinship between the Plan administration, Participants and Plan Sponsors etc - an area reserved under the exclusive jurisdiction of the Federal Courts. What is significant is that Schwab's own Plan Administrative procedures seem to be in conflict with what occurred namely (1) lack of notice to Plantiff before taking her separate property (2) default rules that violate ERISA guidelines and Department of Labor guidelines (3) conflict between Plan documents and implementation of thos Administrative procedures adopted by Schwab.

## Theft of Pension Plan: Lockheed Martin Pension Plan and other Rollover IRA accounts

38. Defendant Bhaskar Vyas worked for Lockheed Martin as seen in his resume. During the work history, Defendant Bhaskar was provided a Pension benefit, a 401(k) to which Defendant Bhaskar contributed over the years. The amount of contributions to this asset are not known to Plaintiff since Defendant Bhaskar concealed this asset over a very lengthy period (Court documents attached to show the concealment). As part of the finalization of the QDRO of other assets last year on or about August of 2015 the Lockheed Martin Pension Plan was discovered along with some other accounts.

39. Plaintiff, via her attorney, contacted the Pension Department of Lockheed Martin, Chambers QDRO Consulting Services LLC, about the same time. Lockheed Martin manages all its retirement benefits through the outsourced consulting firm of  Chambers QDRO Consulting Services, LLC. Plaintiff's attorney contacted this firm and was told that they would only provide any information on Court subpoenas and would not provide any other information except for the confirmation that such asset was a marital asset and some baisc information.

40. Plaintiff was not able to procure Beneficiary Statements from Lockheed Martin.  Under California law, all marital assets for California Residents are community property and as such Plaintiff would be a beneficiary under State law. Plaintiff would also be a beneficiary under the ERISA regulations. Under ERISA regulatory framework then Lockheed Martin Pension Plan and or Chambers QDRO Consulting Services LLC would be a fiduciary with full disclosure obligations to Plaintiff.

41. Defendant Bhaskar became eligible to withdraw monies or distributions from the Lockheed Martin Pension Plan in fall of 2014. Based on very limited conversations, it is Plaintiff's belief that Defendant Bhaskar may have started to take distributions. In any event, Defendant Bhaskar obtained full discretionary control over distributions, management of the Plan and the right

to take all complete liquidated benefits as per communcations from Lockheed Martin. Thus, Defendant Bhaskar exercised full discretionary control and management over the Plan on or about that date. If Defendant Bhaskar has discretionary power to direct investments either on the date he became eligible to receive lump sum payments or before when he had the ability to direct investments, then under such instance Defendant Bhaskar would be a fiduciary even before this date, i.e. on or about August 2014.

42. To date, Defendant Bhaskar has not rectified any records and has made no attempt to correct any falsely filed documents with the State Court. **EXHIBIT A** attached hereto shows no mention of the Lockheed Martin Pension Plan, although this asset should have been listed with the Orange County Family Law Court.

43. Since the Lockheed Martin Pension Plan is not listed, and Defendant Bhaskar became eligible to withdraw or liquidate the entire asset and has not been listed in the Judgment Settlement Agreement, Defendant Bhaskar has taken the Plan as his sole and separate property commiting theft of the Plan (by taking Plaintiff's rightful and legal share of the asset). Please see Pension Department of Lockheed Martin e-mail stating that this is and was Plaintiff's and Defendant's (Bhaskar's) marital asset attached hereto as **EXHIBIT B.**

**44.** It is Plaintiff's belief and upon information, that Defendant Bhaskar holds other Rollover IRA accounts which accounts would be covered under the ERISA framework. Concealment of such accounts would tantamount to theft of such assets. Defendant Bhaskar would be a fiduciary and denying Plaintiff on information of such asset would subject Defendant to breach of fiduciary duties under the ERISA framework. Plaintiff has standing under ERISA on such Rollover IRA accounts.

## Lockheed Martin Pension Plan Department

45.Plaintiff attempted to communicate with the Pension Plan Management of the Lockheed Martin Company via communications with variuos legal staff (attorneys) of Lockheed and then finally with Chambers QDRO Consulting Services LLC. Plaintiff's attorney sent a letter to Lockheed Martin Legal Department and then to Chambers QDRO Consulting Services LLC, asking that they send all information pursuant to ERISA to Plaintiff. Plaintiff also sent the Judgement Settlement Agreement to Lockheed Pension Department. Lockheed Martin came back stating that they would not be sending any information regarding the specifics unless Plaintiff could send the supoena to them demanding that information. Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC, violated their fiduciaries duties when they refused to provide information to Plaintiff.

## **FACTS BEARING ON FIDUCIARY BREACH**

**46.**Defendant Bhaskar Vyas was a fiduciary with respect to Plaintiff both under the California Family law code and under ERISA when he exerted discretionary control on the Lockheed Martin Pension Plan. Defendant Bhaskar became fiduciary when he,

a. exerted discretionary control (in fall of last year); when defedant became eligible to take lump sum distribution or annuity or even earlier if Lockheed Pension 401K allowed Defendant Bhaskar to exercise discretionary control or power to direct investments.

b. when he became eligible to liquidate and take distributions (Defendant Bhaskar may have already done this) if so Defendant Bhaskar then exerted discretionary control when he asserted any ownership or management rights on the Plan assets); and

**c.** when Defendant Bhaskar could select an option to take a lump sum distribution. Defendant Bhaskar also breached this fiduciary duty when he failed to disclose the existence and stole the asset from Plaintiff and also committed a prohibited

transaction when he choose to divert Plaintiff's share of the benefit to himself.

**d.** Any rollover IRA accounts which remain undisclosed would also subject Defendant  Bhaskar to causes of action under the ERISA rules.

**e.** With regards to the Rollover IRA accounts, these were either ERISA accounts and maintained their ERISA status or when Defendant Bhaskar rolled over such ERISA plans to IRA, on the date of such transfer, when such transfer occurred Defendant Bhaskar excercised the management and investment control under ERISA and the failure to provide his spouse Plaintiff her rightful share and the active concealment created that breach of duty under the ERISA rules as well as failure to notify such information to Plaintiff would breach the duty to inform under the ERISA disclosure requirments. Such transfer into Rollover IRA would be also in breach of contract and tort theories applicable under both federal and state law.

//

//

//

**Lockheed Martin Pension Plan Department**

47.Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC, are or is a fiduciary under the ERISA law and breached their fiduciary duty when they refused to provide Plaintiff of any information such as Beneficiary Statements and benefit disclosures.

**<u>DEFENDANT'S FIDUCIARY STATUS</u>**

**A. The Nature of ERISA Fiduciary Status Named Fiduciaries**

**48.**Every ERISA plan must have one or more "named beneficiaries". ERISA section 402(a)(1), 29 U.S.C. section 1102 (a)(1). The person named as "administrator" in the plan instrument is automatically a named fiduciary and, in the absence of such a designation, the sponsor is the administrator, ERISA section 3(16)(A), 29 U.S.C. section 1002 (16)(A). Defendants Lockheed Pension Plan, Chambers QDRO Consulting Services LLC, Charles Schwab and Schwab Retirment Plan Services Company would be the Plan fiduciaries under the law. Defendant Bhaskar would be a fiduciary on the Lockheed Pension Plan 401K on or about August 2014 when he could exercise discretionary control over the investment or earlier if he could direct any investments.

**B. De Facto Fiduciaries.**

49.In addition to persons and entities named as fiduciaries under section 402(a)(1), 29 U.S.C. section 1102(a)(1), ERISA also treats as fiduciaries any other persons who in fact perform fiduciary functions. Thus a person is a fiduciary to the extent "(I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (II) he renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (III) he has any discretionary authority or descretionary responsibility in the administration of such plan." ERISA section 3(21)(A), 29 U.S.C. section 1002(21)(A)(I). Again Defendant Bhaskar would be at the very minimum a De Facto fiduciary when he either excercised or was able to exercise discretionary control on directing investments in the Lockheed 401K. Thus when Lockheed Pension Plan 401K sent communication to Bhaskar that he could take a lump sum distribution or an annuity on or about August 2014, Defendant Bhaskar became a fiduciary under these principles.

50.Each of the Plan Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and their participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan documents and through their conduct and under ERISA. This would apply to all Plan

Defendants: Lockheed Pension Plan and Chambers QDRO Consulting Services LLC, Charles Schwab and Schwab Retirement Plan Services Company and Does 1-100.

51. As fiduciaries, each of these Defendants were required by ERISA section 404(a)(1), 29 U.S.C. section 1104 (a)(1) to manage and administer the Plans and the Plans' investments solely in the interests of the Plans' participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Charles Schwab and Schwab Retirement Plan Servcies Company violated such duty on or about June 2015 when they transferred Plaintiffs' post separation cash reserves to Defendant Bhaskar's separate account in lieu of latter's share of community share and by such unathorized transfer imposed and shifted the entire tax burden on the Plaintiff in addition to the transfering the risk of stocks entirely on one party, a direct breach of fiduciary duty.

52. Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plans management and administration. Rather, as set forth in this document, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and

as further described in this document, the claims against each of  Defendant are

based on such specific discretion and authority.

## THE RELEVANT LAW UNDER ERISA

**53.** ERISA section 502(a)(2), 29 U.S.C. section 1132 (a)(2), provides, in

pertinent part, that a civil action may be brought by a participant for relief

under ERISA section 409, 29 U.S.C. section 1109. Thus Plaintiff brings her

compaint against Charles Schwab and Schwab Retirement Plan Services

Company with regards to the Keogh Retirement Plan and the TSR Plan on

which she is a Plan Participant. Plaintiff's cause of action is based on the fact

that Charles Schwab and Schwab Retirement Plan Services transferred her

post separation cash reserves property to alternate payee or ex spouse when

there was adequate community property to satisfy ex spouse's share and by

taking her separate property she was left holding all the stocks and the entire

tax burden was shifted to her share of the Plan Asset thereby decreasing her

Plan value, such transfer was not authorized either by the Plan documents, by

Schwab's own procedures, or by the QDRO even though the latter may have

lacked the specific instructions to divide the property, nor was there any order

by Court or State law to deprive Plaintiff of her separate property.

54. ERISA section 409(a), 29 U.S.C. section 1109(a), "Liability for Breach of

Fiduciary Duty," provides in pertinent part:

[A]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon Fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the Court may deem appropriate, including removal of such fiduciary. Plaintiff seeks appropriate remedies from all Defendant fiduciaries: Charles Schwab and Schwab Retirement Plan Services witih regards to the Keogh and the TSR Pension Plans, the remedies available under the ERISA rules for the recent cash transfer and taking of Plaintiff's separate property; from Defendant Bhaskar for concealment and theft of Lockheed Pension Plan. Plaintiff is Plan Participant on the Plans administered by Charles Schwab and Schwab Retirement Plan Services Company and Beneficiary of the Lockheed Pension Plan 401k Plan of which her ex spouse is the Participant.

36. ERISA section 502(2)(3), 29 U.S.C. section 1132(a)(3), authorizes individual Participants to seek equitable relief from Defendants, including,

without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief. Plaintiff seeks redress from the actions caused by each of these Defendants: (1) from Charles Schwab and Schwab Retirement Plan Services Company  reversal of the cash transfer into the ex spouse Defendant Bhasksar's segregated account  and costs incurred by Plaintiff in seeking this remedy (2) from Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC information required and penalites for refusal to provide information as required under the law and (3) from Defedant Bhaskar penalties imposed upon not providing information on the Lockheed Pension Plan as requested by Plaintiff on or about December 2009 the date of the divorce decree.

37. ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. section 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man action in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38. These fiduciary duties under ERISA sections 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." [See, *Chao v. Hall Holding Co.,* 285 F. 3d 415, 426 (6th Cir. 2002).] They entail, amongst other things:

(a) the duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance Company Stock, to ensure that each investment is a suitable option for the plan;

(b) the duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with a singular view to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor; and

(c) the duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

Under both ERISA sections quoted in provison 37 and 38 above each of the Defendants including Plan Defendants commited breach of fiduciary duties when they: (1) Plan Defedant Schwab transferred Plaintiff's cash reserves (Plaintiff's separate property) to ex spouse's segregated accounts which imposed a direct tranfer cost of tax and other market based costs and when they the Plan Defendant did not seek prior authorization from the Plaintiff, a violation of their own administrative procedures. See provisions 13 of Schwab's administrative procedures in this context (2) when Lockheed Martin Pension Plan and Chambers QDRO Consulting Services LLC failed to provide Plaintiff requested information under the law and (3) when Defendant Bhaskar failed to provide information on Lockheed Martin Pension Plan as a fiduciary to Plaintiff when such information was requested multiple times from Defendant. Plaintiff shall and is able to provide a log of such requests during the finalization of the divorce.

## **PREEMPTION OF ERISA**

39. Plaintiff's complaint with regards to Lockheed Martin Pension Plan relates to the disclosure requirements under ERISA. Plaintiff requested information

from Lockheed Martin Pension Plan Administrator, Chambers QDRO Consulting Services LLC sometime between early spring to July of 2015. The Plan Administrator refused to provide information without Court Orders after Plaintiff submitted the divorce decree. The Plan Administrator did however agree that the asset was a community property based on the divorce decree. The Plan Administrator (for Lockheed Martin Pension Plan) had a duty to provide requested information by Plaintiff. The Plan Administrator violated ERISA section 404(a)(1)(A), 29 U.S.C. section 1104(a)(1)(A), by failing to provide such information. Any State law or other laws relating to prohibition on providing information is superseded by the ERISA disclosure requirements. Similarly, Defendant Bhaskar had a duty to disclose the Lockheed Martin Pension Plan as a fiduciary and failed to do so upon multiple requests by Plaintiff. Such requests are reflected on the various Court documents filed in the Court. Plaintiff shall provide a log of such requests when and if required to do so.With regard to other Plan Defendant namely Charles Schwab and Schwab Retirement Services Company, the Plan Administrators the cash transfer undertaken by Schwab violated fiduciary duties when such transferred occurred as it was a clear violation of State and federal fiduciary duties- an act undertaken to harm or cause an injury or an act not in the best interest of the Participant (Plaintiff is Participant in both the

plans administered by Charles Schwab) would be subject to ERISA. The alleged QDRO which was interpreted by Schwab as "taking" of Plaintiff's property was based on the QDRO which in turn related to the Plan documents itself and the administration of the Plan. Any act or cause of action that involves a connection with the Plan administration, implementation and which connects with the Plan itself is an area of exclusive jurisdiction of ERISA. The provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 9697, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983).

40. With regards to Defendant Bhaskar's concealed Pension Plan and other Rollover IRAs, Defendant Bhaskar is a fiduciary under both ERISA and common law claims. The claim against this Defendant Bhaskar is based on concealment and taking of a vested Pension benefit where Defendant Bhaskar was a fiduciary and failed to provide such information. Plaintiff was and is a beneficiary under both ERISA and State law and therefore has standing under both. Plaintiff's right to seek her share of the benefits in the Lockheed Pension Plan as a beneficiary are supported by the law followed by the district Courts.

Additionally, Plaintiff upon information and belief takes the position that Defendant Bhaskar has also concealed Rollover IRA's which are protected under the ERISA act, or at a time when ERISA assets were rolled over into the IRA accounts held by Defendant Bhaskar at which point the latter committed clear breach of ERISA provisions, which actions are not subject to any QDRO procedures and which confer immediate standing on Plaintiff to bring this suit. With regards to Schwab Plan Defendants, all issues raised are predicated upon the Plan Administration, the implementation of the QDRO and Plan Administrative procedures. The connection between the Plan, implementation of the Plan and construction of the various Plan documents and Plan Administrative procedures are all issues that "relate to" the Plan. The role of Plan Administrative procedures in the causation of the transfer of property in the Plans managed by Schwab pursuant to the QDRO orders necessitate an interpretation of the Plan procedures and Plan documents. Such a process is by its very definition an area controlled by ERISA and supersedes any State law. The ERISA preemptive provision is to be broadly construed and extends to common law tort and contract actions. [*Ellenburg v. Brockway Inc.* 763 F.2d 1091, 1095 (9th Cir. 1985) ; *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 48, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987).] Even claims brought under State law doctrines that do not explicitly refer to employee benefit plans are

preempted when the claims arise from the administration of such plans whether directly or indirectly. [*Ellenburg*, 763 F.2d at 1095; *Scott v. Gulf* [*417] *Oil Corp.* 754 F.2d 1499, 1504 (9th Cir. 1985).] Recently, the Court has reiterated that the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 4546 (quoting *Alessi v. RaybestosManhattan, Inc.*, 451 U.S. 504, 523, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981)). Lois Gibson, Plaintiff, Appellant, v. The Prudential Insurance Company of America, et al., 915 F. 2d 414; 1990 U.S. App. LEXIS 6141, The Court held that Congress did intend ERISA to preempt claims that relate to an employee benefit plan even if the Defendant is a non-fiduciary. [See, HARRIS TRUST AND SAVINGS BANK, ETC., ET AL. v. SALOMON SMITH BARNEY INC., ET AL. 530 U.S. 238; 120 S. Ct. 2180; 147 L. Ed. 2d 187; 2000 U.S. LEXIS 3962; 68 U.S.L.W. 4508; 24 Employee Benefits Cas. (BNA) 1654; 2000 Cal. Daily Op. Service 4608; 2000 Daily Journal DAR 6193; 2000 Colo. J. C.A.R. 3328; 13 Fla. L. Weekly Fed. S 397.]

41. On the date specified on page 7 of the Lockheed Martin Pension Plan (as reflected in the attached exhibit) Defendant Bhaskar falsely checked his status as "single" when in fact he was married. False information provided on Pension Plan in an attempt to take another beneficiary's share is a prohibited

transaction. Additionally, Plaintiff takes a position, upon information and belief, that Defendant Bhaskar also has concealed and taken Rollover IRA's from Plaintiff, an action in violation of ERISA and other State and federal laws. *These acts are acts that are prohibited under both the ERISA and the Tax code as well as the Department of Labor rules. In the case cited above in provision 40,* the Harris Case Trust and Savings Bank, the case involved a Petitioner trustee and petitioner administrator who brought an action against respondent non-fiduciary alleging respondent's violation of the Employee Retirement Income Security Act (ERISA). The trial Court determined that ERISA section 502(a)(3), 29 U.S.C.S. § 1132(a)(3) provided a private cause of action against non-fiduciaries who participate in a prohibited transaction. Respondent appealed, and the appellate Court reversed, holding that a non-fiduciary could not be liable under ERISA section 502(a)(3), 29 U.S.C.S. § 1132(a)(3) for participating in a ERISA 406, 29 U.S.C.S. § 1106 transaction because where ERISA did not expressly impose a duty, there could be no cause of action. Petitioners filed a petition for a writ of certiorari, claiming that ERISA 502(a)(3), 29 U.S.C.S. § 1132(a)(3) imposed certain duties, and therefore liability under that provision did not depend on whether ERISA's substantive provisions imposed a specific duty on the party being sued. The Court reversed and remanded, holding that the appellate Court erred because

a private cause of action against non-fiduciaries who participated in a prohibited transaction was allowed under ERISA 502(a)(3), 29 U.S.C.S. § 1132(a)(3).

42. Plaintiff has standing to bring her causes of action against each of the Defendants. Plaintiff is Participant and beneficiary under the Plans administered by Schwab (Plan documents establish her status), beneficiary of the Lockheed Pension Plan 401k (under ERISA and State law) and thus is both a participant and beneficiary for the alleged causes of action Stated herein. A participant, beneficiary, or fiduciary is authorized, pursuant to ERISA 502(a)(3), 29 U.S.C.S. § 1132(a)(3), to bring a civil action to enjoin any act or practice which violates any provision of the Employee Retirement Income Security Act or to obtain other appropriate equitable relief to redress such violations

43. Plaintiff also brings complaint based on equitable theories under both ERISA and common law principles. Defendant Bhaskar misrepresented on State Court proceedings when he concealed the Lockheed Pension Plan and again on the Pension Plan documents. Defendant Bhaskar was a fiduciary on the Stated Plan and also on the Rollover IRAs. The taking of such an asset is breach of contract between the parties during their marital relationship, a tort when the divorce was finalized and Defendant did not correct the fraud or the

misrepresentation. Defendant's action to take Plaintiff's share of her interest in the Pension Plan and the Rollover IRA's are subject to principles of equity and Plaintiff requests this Court to provide restitution and a constructive trust based on Pension Plan Asset- the Lockheed Pension Plan and the Rollover IRAs. The concealed assets are subject to the common law principles of equity and those under the ERISA. For purposes of the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC section 1001 et seq.), the authorization, under 502(a)(3) of ERISA (29 USC section 1132(a)(3)), for a "participant, beneficiary, or fiduciary" to bring a civil action to obtain "appropriate equitable relief" to address some ERISA violations extends to a suit against a non-fiduciary "party in interest" to a transaction barred by 406(a) of ERISA (29 USC section 1106(a)), as (1) 502(a)(3), 29 U.S.C. 1132(a)(3), itself imposes certain duties; (2) Therefore, liability under 502(a)(3), U.S.C. 1132 (a)(3) does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued; (3) Aside from the appropriate equitable relief caveat, 502(a)(3), 29 U.S.C. 1132(a)(3) admits of no limit on the universe of possible Defendants; (4) 502(l) of ERISA (29 USC section 1132(l)) which authorizes civil penalty actions by the United States Secretary of Labor against an "other person" who knowingly participates in an ERISA violation by a fiduciary compels the conclusion that Defendant status under

502(a)(3), U.S.C. 1132(a)(3) does not turn on whether a Defendant is expressly subject to a duty under one of ERISA's substantive provisions; (5) the argument that it would contravene common sense for Congress to impose civil liability on a party that has not violated a duty expressly imposed by ERISA's substantive provisions ignores the limiting principle explicit in 502(a)(3) that the relief be appropriate equitable relief; and (6) an action, such as the one in the instant case, for restitution against an alleged transferee of asserted tainted plan assets (a) satisfies the appropriateness criterion in 502(a)(3), and (b), U.S.C. 1132(a)(3), seeks relief that is equitable in nature.

44. With regards to Ms. Nancy Bunn who refused to correct the QDRO instruments, Plaintiff incurred substantial damages as a direct impact of the deficient QDRO's filed with the Court and submitted subsequently to the Plan Administrators. Ms. Nancy Bunn is a Court appointed third party with fiduciary duties toward each party to the QDRO. Ms. Bunn's filing of inadequately drafted QDROs and her insistence on filing such documents in the face of Plaintiff's communications by her legal counsel including Legal Opinion letters stating why these instruments (the QDROs) should be corrected and failure to correct such documents are a direct breach of fiduciary duties. Ms. Nancy Bunn falsely filed erroneous documents with the State Court even after multiple requests by Plaintiff to correct such documents. Ms.

Nancy Bunn retainer agreement was presented to Plaintiff on or about August 9, 2010. Subsequent to this retainer that was executed by Plaintiff, Defendant Bhaskar and Ms. Bunn, the latter (Ms.Bunn) represented to Plaintiff that she was a neutral party and would represent the interests of all parties. In this context, Plaintiff relied on Ms. Bunn to provide and draft accurate QDRO instruments that would lay out the division of property. Ms. Bunn represented that she is a QDRO expert and that her practice is limited to the drafting of QDRO's. This representation is made on the face of her engagement letter or retainer document provided to Plaintiff on or about August 9, 2010. Plaintiff relied on these Statements and her reliance on Ms. Bunn's ability to draft specific documents that would provide adequate instructions to Plan Administrators in the division of the property. Ms. Bunn filed erroneous documents during the period starting from 2012 to as recent as 2015.  Ms. Bunn submitted these erroneously drafted documents with the Court in 2015 and in June of 2015 caused these documents to be submitted to Charles Schwab and Schwab Retirement Plan Services Company who then promptly took Plaintiff's separate property (event though there was adequate community property sitting to satisfy ex spouse's share of community property). Plaintiff reliance was both on the Statements made that Ms. Bunn had adequate background in the area of QDROs and that Ms. Bunn would

fairly represent each party when completing the QDRO task. Ms. Bunn has refused to review or provide a forum to discuss any objections raised by Plaintiff. Ms. Bunn's representation that she would represent each party fairly flies in the face of the following actions taken by her: (1) Ms. Bunn undertook to draft inadequate documents and refused to work with Plaintiff after executing a retainer agreement which States that she would represent her fairly (2) Page 2 of 6 of Ms. Nancy Bunn's retainer States: "We are available to both parties and to counsel to answer any questions that may arise". Ms. Bunn refused to communicate either with the Plaintiff or her counsel even after multiple communications were attempted to reach out to her. Page 6 of 6 of the retainer agreement States "We hereby agree that Nancy Bunn be appointed as a joint neutral expert to implement the terms of our judgment". Nancy Bunn has made a representation on or about August 2010 that she would implement the terms of the divorce degree and the judgment settlement agreement. However, the judgement settlement agreement does not State that Plaintiff's separate property be transferred to ex-spouse nor does it State that it should be modified in any way. Ms. Bunn's retainer does not grant powers to her to modify any settlement agreement. However, that is exactly what Ms. Bunn has done in the drafting and filing of inadequate QDRO and filing of such documents with the Court. A deliberate non-disclosure by Ms. Bunn to

the Court of Plaintiff's attempt to correct such document is a misrepresentation that parties agreed and approved of the documents (occurring in year 2015). Additionally, Ms. Bunn States that she is neutral but agreed to testify against Plaintiff on a Court proceeding in State Court. This would be in direct conflict of the multiple Statements made by Ms. Bunn that she is a third party neutral expert. When misrepresentations of a fiduciary are fraudulent and relied upon by plan participants to their detriment, the Court may award affected participants compensatory and punitive damages as well as Court costs and attorneys' fees. [*See* Monson v. Century Mfg. Co., 739 F.2d 1293 (8th Cir. 1984)].

45. The QDRO instrument as drafted by Ms. Bunn and interpreted by Plan Administrators require the construction and interpretation of the Plan documents, the Plan Administrative procedures by Charles Schwab. The QDRO Documents that affected valuation of Plaintiff's benefits, provisions affecting Plan Administration go to the very substance of the ERISA regulation that is exclusive jurisdiction of the federal Courts. Any area that includes these issues are preempted by Federal jurisdiction. Thus the submitted QDRO provisions that affect valuation of the benefits of the Plaintiff, the relationship between the Plan administration and other parties, the construction of the Plan documents and interpretations of such

documents, are all issues that "relate" to the Plan. These would therefore fall under the exclusive federal jurisdiction under the various provisions of ERISA.

**RELEVANT LAW UNDER DUE PROCESS CLAUSE 42 U.S.C. SECTION 1983 AND 1981**

46. Throughout the period of 2015 the State Court approved various QDRO Orders directing the Plan Administrators on division of the Plan Assets, their enforcement and right and obligations of the Participants and Beneficiaries were finalized. The determining instrument approved by the State Court the QDRO facially did not seem deficient at first, it was only upon the review of specific provisions of the QDRO, the Pension Plan documents and Schwab Administrative procedures followed that the deficiencies of the QDRO surface. The instrument when implemented caused an inaccurate transfer due to lack of specific instructions on the various accounts held in the Plan Asset. Plaintiff reached out on multiple occasions to the Court appointed QDRO drafter, Ms. Bunn, then reached out to the Court and the Plan Administrators.  Plaintiff undertook an exhaustive process and substantial legal fees to correct the instrument. Plaintiff filed a notice of objection in the State Court and made multiple attempts to reach Ms. Bunn. No forum was achieved where Plaintiff could voice her objections.

Eventually when the cash transfer by Schwab was done, it revealed the inadequacies of the instrument. Because Plaintiff could not procure a fair hearing either at the State Court or with the Plan Administrators, Plaintiff filed this suit.  Plaintiff now alleges that she was denied her due process. The due process clause of 42 USC section 1983 provides: Every person who under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in Equity, or other proper proceedings in redress, except that in any action brought against a Judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

47. Plaintiff was also denied her right to equal protection when she sought to correct these instruments. Plaintiff was denied equal protection which States: Pursuant to 42 USC code section 1981, "All persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and properties as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other".

48. Plaintiff was denied any due process and equal protection when the related ERISA assets were approved for QDRO status by the State Court without a hearing on the QDRO documents and when Plaintiff sought to reach the Plan Administrators on the correction of the instrument.

## CONSTRUCTIVE FRAUD, DECEIT, FALSE PROMISE, CONCEALMENT CALIFORNIA CODE SECTION 1709, et seq.

49. Defendant Bhaskar held himself out as a stockbroker, investment advisor and real estate and mortgage license. Under the federal law a stockbroker, investment advisor owes a duty of a fiduciary to his client. Defendant's (Bhaskar's) relationship with Plaintiff was that of a stockbroker and investment advisor of various community assets and as a real estate broker for any real estate acquisitions done for the community. Defendant Bhaskar was also spouse of the Plaintiff. Under family law and as a DRE (Department of Real Estate) Defendant Bhaskar automatically is treated

under State Law as a fiduciary. Additionally, the provisions of California Business and Professions Code section 10176, California Civil Code 2322, the Regulations of the Commissioner of the California Department of Real Estate, all of which prohibit fraudulent and deceit etc. (California CCP 3294-3296). Additionally, Defendant Bhaskar violated the Department of Labor guidelines when Defendant Bhaskar violated all these laws when he stole the Lockheed Martin Pension Plan Asset and other Rollover IRA accounts.

## **RELEVANT LAW UNDER SECURITIES VIOLATIONS**

50. Rule 10b-5, promulgated by the U.S. Securities and Exchange Commission ("SEC") under 10(b) of the Exchange Act, prohibits fraudulent conduct in connection with the purchase or sale of securities. See 15 U.S.C. section 78j. Rule 10b-5 provides that it is unlawful for any person, directly or indirectly:

1. to employ and device, scheme, or artifice to defraud,

2. to make any untrue Statement of material fact or to omit to State a material fact necessary in order to make the Statements made, in the light of the circumstances under which they were made, not misleading, or

3. to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security

## **17 C.F.R. section 20.10b-5**

51. In order to plead a claim for securities fraud under Section 10(b) and Rule

   10b-5, a plaintiff must plead:

   a.      A misrepresentation or omission of

   b.      A material fact

   c.      Reliance thereon

   d.      Causation

   e.      Damages; and

   f.      Fraudulent conduct (scienter),

in connection with the purchase or sale of a security.

[See, Eric P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011);

Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1317 (2011); In re DVI,

Inc. sec. Litig., 639 F. 3d 623, 630 (3d Cir. 2011); Find What Investor Grp. V.

FindWhat.com, 658 F. 3d 1285, 1295 (11th Cir. 2011); Ashland, Inc. v.

Oppenheimer & Co., 648 F. 3d. 461, 468 (6th Cir. 2011); Katyle v. Penn Nat'l

Gaming, Inc., 637 F. 3d 462, 480 (4th Cir.) cert, denied, 132 S. Ct. 115 (2011);

Desai v. Deutsche Bank Sec. Ltd., 573 F. 3d 931, 939 (9th Cir. 2009); Cent.

Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F. 3d 546, 550 (5th Cir.

2007); Miss. Pub. Emps.' Ret. Sys. v. Bos. Scientific Corp., 649 F. 3d 5, 20 (1st

Cir. 2011); Cardon v. TestOut! Corp., 244 F. App'x 908, 914-15 (10th Cir. 2007).]

52. The definition of "security" includes any "investment contract" as defined in section 3(a) (10) of the Securities Exchange Act of 1934, 15 U.S.C.S. section 78c(a) (10). An involuntary, noncontributory pension fund interest is an investment contract because money is invested in a common enterprise, the management of which is committed to a third party, and from which profits and income are reasonably expected.

53. The Employment Retirement Income Security Act of 1974 (ERISA) and the securities act should be construed as complementary to each other and that ERISA does not preempt the anti-fraud provisions of the securities acts in the field of pensions.

54. The Lockheed Martin Pension Plan is a security under the meaning of the Securities regulations. Defendant Bhaskar engaged in a fraudulent scheme by diverting the security – the Pension Asset and used US Mail in filing false documents with Lockheed Martin Pension and then attempted to steal the proceeds of the asset. Additionally, any Rollover IRA which required purchase and sale of securities would fall within the Securities regulations. Defendant Bhaskar traded, purchased and sold various securities on the IRAs and had discretionary control over the investments in the Pension Plan. Defendant Bhaskar was therefore purchasing and selling on these securities when he committed fraud upon the Plaintiff on each of these transactions.

For meeting the pleading requirement on this area the following details are provided:

1. Defendant Bhaskar exercised discretionary control on the Lockheed Pension Plan (contributory pension plan qualifies as a security) during the period of 2000s to 2014 when he became eligible to withdraw. Specifically, on August 2014 Defendant Bhaskar became eligible to withdraw. When Defendant Bhaskar failed to disclose Plaintiff's interest in the security, then he was liable under the securities law for fraud on the Plaintiff. The intent to commit fraud upon the Plaintiff as required is reflected in the Defendant Bhaskar's checking off the box as "single" when in fact he was married.

2. When Defendant Bhaskar traded in various securities on the Rollover IRA's commissions as well as the moneys sitting in the securities were concealed. These trades occurred between year 2000 and during the period of 2000. Plaintiff shall produce any records when and if required to do so. Since the commissions on these transactions were never disclosed and neither was the

existence of such income (commissions on the trades) as well as the assets, as reflected in the false schedule of assets filed in the State Court, an intent to commit fraud and malice is established.

## CLAIMS FOR RELIEF

**CLAIMS FOR RELIEF UNDER ERISA**

1. At all relevant times, Defendants (PLAN DEFENDANTS; LOCKHEED MARTIN PENSION PLAN AND ADMINISTRATOR; QDRO CONSULTING SERVICES, LLC; CHARLES SCHWAB AND SCHWAB RETIREMENT SERVICES COMPANY AS PLAN ADMINISTRTORS, and DOES 1 through 100, inclusive) were fiduciaries of the ERISA Plans within the meaning of ERISA Section 3(21) (A), 29 U.S.C. section 1002(21)(A). DEFENDANT BHASKAR VYAS WAS FIDUCIARY UNDER ERISA LAW WHEN HE EXCERCISED INVESTMENT CHOICES ON THE UNDELRYING PENSION PLAN (AND ROLLOVER IRAS) OR WAS IN A POSITION OF DESCRETIONARY CONTROL TO EXERCISE SUCH CHOICES.  NANCY BUNN WAS FIDUCIARY UNDER COMMON LAW PRINCIPLES AND THEORIES OF COMMON TRUST PRINCIPLES.

2. ERISA Section 502(a) (2), 29 U.S.C 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a fiduciary for relief under the ERISA Section 409, 29 U.S.C. section 1109.

3. ERISA Section 409(a), 29 U.S.C. section 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting for each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the Court may deem appropriate including removal of such fiduciary."

4. ERISA Section 40(a)(1), 29 U.S.C. section 1104(a)(1), provides, in pertinent part, that fiduciaries are to manage and administer the plan, and the plan's investments solely in the interest of the plan's participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

5. ERISA Section 406(b), 29 U.S.C. section 1106(b) specifically prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest."

**COUNT I**

*With Regard to Defendant, Bhaskar Vyas, Breach of Fiduciary-* engagement in Prohibited transaction (theft of asset). Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. With regards to Defendant Bhaskar, when the latter concealed the Lockheed Pension Plan and other Rollover IRAs, he as a fiduciary entered into dealing with the asset(s) for his own interest and account, a clear breach of various ERISA provisions. ERISA section 406(b)(1), 29 U.S.C. section 1106(b)(1) prohibits a fiduciary from dealing with the assets of an employee benefit plan for its own interest or own account.

**COUNT II**

With regard to Defendant, Bhaskar Vyas, Breach of Fiduciary Duty by Defendant Bhaskar Vyas. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. When Defendant Bhaskar failed to disclose hidden assets Lockheed Martin Pension Plan and Rollover IRAs, he committed a breach of fiduciary duty (Defendant is a fiduciary as he had discretionary control of the assets in question as discussed above in previous paragraphs). Defendant was required to provide full disclosures, failure to do so violated various provisions

of ERISA. ERISA section 406(b)(2), 29 U.S.C. section 1106(b)(2). Failure to provide information ERISA section 104(b)(4) and ERISA 404(a)(1)(A).

## COUNT III

With regard to Lockheed Martin Pension Plan and Administrator, Breach of Fiduciary Duty. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. When Defendant failed to provide Plaintiff requested information they breached various sections of ERISA. Failure to provide information ERISA section 104(b)(4), 29 U.S.C. 1024(b)(4) and ERISA 404(a)(1)(A), 29 U.S.C. 1104(a)(1)(A).

## COUNT IV

With regard to Charles Schwab and Schwab Retirement Plan Services Company. Breach of Fiduciary Duty. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. ERISA section 404(a)(1)(A), 29 U.S.C. section 1104 (a)(1)(A) requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan. ERISA section 404 (a)(1)(D), 29 U.S.C. 1104 (a)(1)(D) requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA. Defendants Charles

Schwab and Schwab Retirement Plan Services Company violated these sections when they transferred Plaintiff's separate property of cash reserves to Defendant in violation of ERISA and State law.

## COUNT V

With regard to Defendant, Bhaskar Vyas, Request Court Order instructing Defendant, Bhaskar Vyas, to provide full accounting of assets. Plaintiff requests Court to order Defendant full accounting of all assets. Bhaskar has breached contract which he executed with Plaintiff to share all community property and not divest Plaintiff's share to his own, breached duty of care and misrepresented and committed fraud by concealment of such assets on or about December 2009 where during disclosures required by family law proceedings he deliberately concealed assets and income.

## COUNT VI

With regard to Ms. Nancy Bunn, Breach of Contract. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. Ms. Bunn breached terms of her own engagement letter when she refused to co-operate with Plaintiff specifically when (1) Ms. Bunn refused to communicate and respond to Plaintiff upon the latter's multiple requests as was required under the terms of the engagement letter (2) inadequately drafted the QDRO with lack of specific instructions and was negligent in doing so which later caused Schwab to transfer

Plaintiff's separate property of Pension fund reserves to ex-spouse (3) breach of good faith and fair dealing when Ms. Bunn erroneously filed QDRO over Plaintiff's objections in the State Court without disclosing to the judge that Plaintiff had objections on the drafted documents thus misrepresenting to the Court that these documents were approved by the parties.

**COUNT VII**

With regard to Ms. Nancy Bunn, Breach of fiduciary duty under the terms of the engagement letter. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. Ms. Bunn was retained as a neutral third party and to represent each party's position. When Ms. Bunn refused to talk with Plaintiff's legal counsel and her representatives to hear the objections on the drafted documents, she misrepresented that she would represent each party's interest. The QDRO finalization containing errors will cause an unequal division of property in addition to taking separate property of Plaintiff's. The division is not authorized by the Judgment Settlement agreement, nor is it pursuant to the terms of the divorce agreement. Should Treasury take the position that this is a transfer not pursuant to a divorce agreement, the implications on Defendant will also be harsh. Ms. Bunn has caused a disservice to both parties. The fiduciary duty to act in a manner to represent Court orders and in accordance to the Judgment Settlement agreement that was executed and approved by State Court on December 2009 is

clear and Ms. Bunn States so on her own engagement letter. However, her negligently drafted QDRO are contrary to the Plan documents, State law, the Judgment Settlement Agreement and the terms of the Divorce decree. Ms. Bunn has violated the fiduciary duty to both parties.

## COUNT VIII

With regard to Defendant Bhaskar Vyas, and with regards to the Rollover IRAs and the Lockheed Pension Plan, these assets qualify the definition of "securities" under the Securities act of 1934 and amendments thereto. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. Concealment of the commissions on the traded securities, transfer of such profits on the purchase and sale of such securities and assets with the underlying securities are breach of various securities laws.

## COUNT IX

With regard to various breaches by Defendants Plaintiff requests remedies under various equitable theories. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein. Under the equitable common law and equitable remedies under ERISA Plaintiff requests that adequate restitution, rescission and any other equitable principles be applied to the various acts: (1) the fact that Defendant Bhaskar took the concealed assets, income on traded securities on the Rollover IRAs and possibly on the Pension Plan should be

subject to the constructive trust and restitution based on the various equitable theories (2) Charles Schwab and Schwab Retirement Plan Services Company taking Plaintiff's separate property and transferring to ex-spouse in lieu of latter's share of community property when there was adequate community property to satisfy ex spouse's share is subjective to common law breach of trust and fiduciary duties, such action should be subjected to Plaintiff's request for constructive trust then on the transferred property and a reversal on the action taken by Schwab as this not yet been distributed to ex-spouse but sitting in segregated account set up by Schwab.

**COUNT X**

With regard to Schwab, the taking of cash reserves that are separate property of Plaintiff are cash sitting in the securities account. Schwab is the investment manager of the fund and accounts managed for the pension plan. Plaintiff incorporates by reference all previous paragraphs of this complaint as if set forth fully herein The underlying securities are managed entirely by Schwab Retirement Plan Services Company. When Schwab took the cash reserves sitting the funds or securities account, they violated fiduciary duties under the securities laws. Schwab is the fund manager on the pension plan security accounts, the transfer on June 2015 resulted in taking of the cash accounts that are separate property of Plaintiff in her investment accounts that are part of the retirement plan package. The 401k

and such accounts qualify as "securities" within the definition of "Securities Act of 1934" and amendments thereto. Schwab Retirement Plan Services Company violated the fiduciary duties under such laws.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

A. Plaintiff requests Court to Order Plan Administrator Schwab Retirement Plan Services Company to approve amended instructions such that they conform to the divorce decree and comply with ERISA.

B. That this Court order Defendants to restore Plaintiff who have caused harm to her for her costs and attorney fees and any other damages available under the law.

C. For Lockheed Martin to provide all and any information pursuant to the ERISA law Stated above and any penalties for refusing to provide any information.

D. For Ms. Nancy Bunn to restore any losses caused by her actions to Plaintiff and damages due under breach of contract, negligence and breach of fiduciary duties.

E. For any further relief which the Court deems to be just and appropriate, including taxable costs and interest, as provided by law.

F.  That this Court order Defendants to pay Plaintiff's reasonable attorney's fees incurred as a result of initiating and prosecuting this action in accordance with ERISA Section 502(g)(1), 29 U.S.C. Section 1132 (g)(1).

G.  That this Court order Defendant Bhaskar a full accounting to State all assets and securities accounts held during the community and to return Plaintiff's her share of the assets and income not disclosed with specific reference to any distributions taken, or any asset taken, any Rollover IRA taken and any securities and accounts taken from the community. Plaintiff requests Court to award breach of contract, and tort (misrepresentation and fraud) damages to Plaintiff under common law principles.

H.  Impose a constructive trust over any monies by which Defendant Bhaskar was unjustly enriched as a result of such breaches of ERISA applicable provisions (see below) and award appropriate equitable relief including, but not limited to, disgorgement of all profits and ill-gotten gains realized by the Defendant Bhaskar Vyas.  Declare Defendant Bhaskar has breached his fiduciary duty in violation of ERISA section 404(a), 29 U.S.C. section 1104(a) and engaged in prohibited transactions and self-dealing in violation of ERISA section 406, 29 U.S.C. section 1106.

I.  Find for the Plaintiff that the QDRO documents were in conflict with the Plan documents of the Keogh and or TSR Plans or if not, then find that the

lack of adequate instructions on the QDRO documents caused the "taking" of Plaintiff's separate property of cash reserves sitting in the Plaintiff's post separation and separate property or find that the Schwab Administrative procedures failed to correct such occurrence of such taking after having the relevant QDRO served upon them. Either way Plaintiff request Court's specific finding on the construction of the Schwab's Plan Administrative procedures (referencing the distributive provisions) and the QDRO instrument prepared by Nancy Bunn. Plaintiff shall provide legal opinion letters when and if required to do so.

J.   Award any other and further relief available to Plaintiff.


Dated: 4/5/2016                                By*: /s/Nupur Nagar*

**James Garrison, Esq.**
**Nupur Nagar, Esq.**
Attorneys for Plaintiff,
DR. SUJATA VYAS, an individual